UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NELSON G. SANTIAGO, <br>                          Plaintiff, <br>                  v. <br> SUPERINTENDENT CYNTHIA LINK; <br> JOE KORSZNIAK, *Correctional Health Care Administrator*; <br> DR. WEINER, *MDO of Correct Care Solutions*; <br> BOB GROSSMAN, *Nurse Supervisor*; <br> RN JAIME LINK, *Subordinate*; <br> CORRECTIONAL OFFICER MEREDITH; <br> CORRECTIONAL OFFICER PUFORY;[1] <br> CORRECTIONAL OFFICER AUSTIN; and <br> CORRECTIONAL OFFICER LT. KNAPP, <br>                          Defendants. | No. 2:17-cv-05788 |

**O P I N I O N**

**Defendants Austin, Grossman, Knapp, Korszniak, S. Link, J. Link, Meredith, and Peurifoy's Motion to Dismiss, ECF No. 14—Granted in Part and Denied in Part**

**Defendant Weiner's Motion to Dismiss, ECF No. 17—Granted**

**Joseph F. Leeson, Jr.**                                                                  **March 11, 2019**
**United States District Judge**

I.     **INTRODUCTION**

        Plaintiff, an inmate housed in a Commonwealth of Pennsylvania correctional facility, has brought this civil action pursuant to 42 U.S.C. § 1983 against prison officials, correctional officers, and medical personnel for their alleged deliberate indifference to his medical needs while an inmate at State Correctional Institution Graterford. The prison officials, correctional

---

[1]     The correct spelling of this Defendant's name is Peurifoy.

officers, and medical personnel have moved separately to dismiss the civil action under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motions to dismiss are granted, granted in part, and denied in part.

## II. BACKGROUND[2]

### A. Factual History

In his complaint, Plaintiff Nelson G. Santiago describes alleged inadequate medical care from the staff at State Correctional Institution (SCI) Graterford. His complaint begins at the end of 2016 when he was committed to SCI Graterford. During his initial assessment at SCI Graterford, Santiago and Defendant Jamie Link, RN, discussed and confirmed Santiago's diagnosis of Multiple Sclerosis (MS). J. Link informed Santiago then that he would be seen in SCI Graterford's Chronic Care Clinic within the first few days of his incarceration.

Even though Santiago repeatedly submitted sick call request forms and spoke with a physician's assistant about his lack of medical care, he did not receive any medical attention or medications for his MS until February 7, 2017. Nicolas Scharff, MD, began treating Santiago at Chronic Care Clinic for his MS on that date. Scharff provided Santiago with a cane and ordered that he take showers in the handicap shower in the medical unit because of previous falls in the shower. Sometime in March, Scharff requested directly from Defendant Superintendent Cynthia Link that Santiago be transferred to SCI Chester because that facility is completely smoke-free and is air-conditioned. Scharff treated Santiago without issue until June 2017.

---

[2] The background information in this section is taken from the complaint and is set forth as if true solely for purpose of analyzing the pending motions to dismiss. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Only the facts relevant to the Court's analysis have been included.

Beginning in the spring and summer months, as the weather temperatures increased, Santiago began to experience worsening of his MS symptoms. He informed Scharff of this on June 14, 2017 and Scharff ordered that Santiago be given a medical fan. For over three weeks, Santiago did not receive a fan. It was not until July 7, 2017, that Santiago was given a fan to treat his worsening symptoms.

As the heat at SCI Graterford became more severe, Santiago felt that the fan he was given was not sufficient to treat his symptoms. He asked a doctor, identified as Abney, MD, about receiving a medical pass for a bag of ice from the medical unit, three times a day, for thirty days. Abney approved this pass on July 12, 2017.

Santiago received the bag of ice from the medical unit without issue for several days until July 19, 2017. On that date, as Santiago exited the medical unit, Defendant Correctional Officer Meredith approached Santiago, requested to see the medical pass, and ordered him to follow Meredith to the dispensary room. Once there, Meredith handed to J. Link Santiago's medical pass and J. Link informed them that the ice machine in the medical unit was only for inmates housed in the medical unit. It was unspoken that this would mean that Santiago could not receive ice because he was not housed in the medical unit. Santiago informed J. Link that the high temperatures had caused him serious distress and he needed the ice for treatment. J. Link acknowledged Santiago's MS but stated that he could not treat Santiago differently. At this point Meredith led Santiago away.

The next day, Santiago went to the medical unit to take a shower and receive his medicine. There he informed a nurse, identified as Voltz, RN, that he was having trouble balancing, was trembling, and was feeling dizzy. Voltz directed Santiago to take a cold shower and sit in the medical unit, which is air-conditioned, for as long as needed. The same

3
031119

circumstances occurred the following day and a nurse, identified as Joyce, RN, directed Santiago to take a cold shower and sit in the medical unit for as long as needed.

Santiago returned to his housing unit that evening. Because Santiago was feeling dizzy and nauseous, was having trouble balancing, and had lost mobility, he stood in front of his housing unit's fan. As he went to his cell to lie down, Santiago started to experience paralysis on the left side of his body and he passed out. After he passed out, he was taken to the medical unit for evaluation, and then taken to the emergency room at the Einstein Medical Center Montgomery. There he was diagnosed as having a "major flare-up" caused exclusively by the high temperatures in his housing unit at SCI Graterford. He was also diagnosed with three lesions caused by the MS and received steroids to treat facial paralysis and the paralysis on the left side of his body. The medical center discharged Santiago three days later, on July 24, 2017, with orders to: (1) continue receiving physical therapy, (2) continue taking his MS medication, (3) treat the heat with bags of ice, and (4) see a neurologist within thirty days.

Once back at SCI Graterford, Santiago was returned to his housing unit and told that he would be seen in the Chronic Care Clinic when possible. Two days later, on July 26, 2017, Santiago approached the medical director at SCI Graterford, Defendant Weiner, MD, and explained to him his recent hospitalization and how the heat caused the flare-up. Weiner wrote Santiago a medical pass to receive a bag of ice from the medical unit, three times a day. When Santiago went to receive his ice bag the following day, Meredith again harassed him. Defendants Correctional Officers Buford[3] and Austin also began to harass Santiago about the medical pass.

---

[3] In Santiago's complaint and brief, he identifies Buford as one of the corrections officers involved in the claims. Santiago has not included Buford as a defendant in this matter. Instead, he listed Correctional Officer Peurifoy. Peurifoy is not referenced in his complaint. It appears

Meredith, Buford, and Austin (together, the "Correctional Officers") told Santiago that he would not receive ice bags no matter who wrote the medical pass. Austin then confiscated the medical pass and Buford stated that Santiago should not return to the medical unit for ice.

The next day, Weiner wrote Santiago another medical pass to receive ice from the medical unit. Weiner also called the prison administration to explain the situation and the need for Santiago to receive the ice. In addition to Weiner's explanation to the prison administration, Santiago also explained the circumstances to the housing unit manager. The manager scanned the medical pass and emailed the rest of the administration about the circumstances surrounding Santiago and the ice. The manager also wrote on the medical pass that Santiago must receive the ice bags from the medical unit and informed Santiago if any SCI Graterford staff member prevented Santiago from receiving the ice bags that he should have that staff member contact the manager.

Several days later, as Santiago left the medical unit with a bag of ice he was confronted by Meredith and Austin. Austin asked for the medical pass, went to Weiner and argued with him about the pass. After Weiner explained to Austin that Santiago must have ice, Austin called the housing unit manager who told him the same. From that day on, Santiago had no issues retrieving the ice bags from the medical unit, but the Correctional Officers would make negative comments about Santiago receiving the ice.

Towards the end of October 2017, Santiago was taken to the Einstein Medical Center Philadelphia for a consultation with a neurologist. This occurred more than four months after Santiago had been discharged from the medical center in Montgomery and even though the

---

that this could have been a clerical error. If Santiago wishes to include Buford in the matter, he should include Buford when he amends his complaint.

discharge orders indicated that Santiago was to see a neurologist within thirty days of discharge. The neurologist ordered Santiago to see a urologist and sleep specialist and have further lab work done.

On November 1, 2017, as a result of Scharff's previous request, Santiago was transferred to SCI Chester. Several days later, on November 11, 2017, the Central Office of the Pennsylvania Department of Corrections denied a grievance Santiago had filed. The grievance apparently concerned the conduct of the Correctional Officers and medical personnel at SCI Graterford and alleged that their conduct led to the physical impairments and the continuous and increasing health concerns Santiago suffers. The Central Office allegedly denied the grievance without addressing Santiago's allegations. It determined that SCI Chester is more accommodating and meets Santiago's needs; therefore, the grievance was addressed.

### B. Procedural History

On December 26, 2017, Santiago filed a pro se complaint and application for leave to proceed *in forma pauperis*. The application for leave to proceed *in forma pauperis* was granted the following week. The complaint alleges that in 2017, when he was an inmate at SCI Graterford, Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment, pursuant to citing, 42 U.S.C. § 1983.

On March 5, 2018, Defendants C. Link, Korzniak, J. Link, Knapp, Meredith, Peurifoy, Grossman, and Austin (the "Corrections Defendants") moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). On March 8, 2018, Defendant Weiner also moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

6
031119

On April 5, 2018, the Court directed Santiago to file a response to Defendants' motions to dismiss no later than April 20, 2018. In response to this Order, Santiago filed a response on April 23, 2018. This response only addresses the Corrections Defendants' motion to dismiss.[4]

## III. LEGAL STANDARDS

### C. Motion to Dismiss—Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for its "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Rules generally demand "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)).

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining

---

[4] The Court has screened the complaint with respect to Weiner and dismisses him *sua sponte* for the reasons discussed below.

"whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The Court is required to liberally construe a pro se litigant's pleadings. *See Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### D. Initial Screening

Where a plaintiff has been granted leave to proceed *in forma pauperis*, as is the case here, the Court is required to screen the complaint. *See* 28 U.S.C. § 1915(e)(2). *See also* 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c)(1); *Jones v. Bock*, 549 U.S. 199, 214 (2007). The standard of review is the same as for a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bartelli v. Galabinski*, 228 F. App'x 194, 196 (3d Cir. 2007).

## IV. ANALYSIS

The Court addresses the Corrections Defendants' and Defendant Weiner's motions to dismiss separately.

### A. Corrections Defendants' Motion to Dismiss

The Corrections Defendants move to dismiss on three grounds: (1) Santiago has not alleged adequate personal involvement by Defendants Korszniak, Grossman, C. Link, Peurifoy, and Knapp; (2) Defendant J. Link lacks personal involvement in the initial perceived delay of medical care and denial of ice for one day does not rise to the level of a constitutional claim; and (3) Santiago was receiving medical treatment for his multiple sclerosis, and the alleged denial of ice does not rise to the level of a constitutional claim. In response, Santiago contends generally

8
031119

that his complaint pleads sufficient factual matter to state a claim for a violation of the Cruel and Unusual Punishment clause of the Eighth Amendment. He further references other facts that were not included in his complaint.

The Court addresses each of the Corrections Defendants' arguments in turn.

**1. Defendants Korszniak, Grossman, C. Link, Peurifoy, and Knapp**

The Corrections Defendants argue that these defendants should be dismissed because Santiago fails to state a claim against them. They contend that Korszniak, Grossman, Peurifoy, and Knapp are not mentioned anywhere in the lawsuit except the caption, and that C. Link is mentioned only once. Santiago does not address this argument directly, asserts generally that he has established his claim against the defendants, and references facts outside of his complaint that allegedly support his claim.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 536 (1981); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)); *see also Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) ("A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995)).

Here, Santiago fails to allege any personal involvement on the part of Korszniak, Grossman, Peurifoy, or Knapp. His complaint includes no allegations that even name these Defendants. Although Santiago names these Defendants and their job titles in the section of his complaint labeled "parties," "listing . . . job responsibilities is not sufficient to create an allegation of personal direction or of actual knowledge and acquiescence." *Paskel v. Nutter*, No. 13-cv-5755, 2014 U.S. Dist. LEXIS 112697, at *4 (E.D. Pa. Aug. 13, 2014). The Court also notes, that Santiago makes a number of allegations in his brief in opposition to the motion to dismiss that are not included in the complaint. *See* Opp'n Br. ¶¶ 3–6, 8–9. These types of allegations cannot be considered unless they are included in the complaint. *See Chavarriaga*, 806 F.3d at 232 ("Although a court on a motion to dismiss ordinarily must accept the allegations in the complaint as true, it is not compelled to accept assertions in a brief without support in the pleadings." (internal quotations omitted)).

With respect to C. Link, Santiago only alleges involvement by her in passing. In his brief, however, he includes more detailed allegations that appear to set forth C. Link's personal involvement in the claims alleged. For the same reasons above, the Court cannot consider those allegations.

For these reasons, Santiago fails to state a claim against these Defendants, and his claims against them are dismissed. The Court will, however, grant Santiago leave to file a second amended complaint.

### 2. Defendant J. Link

Next, the Corrections Defendants argue that the Court should dismiss the complaint as to J. Link because he lacks personal involvement in the initial perceived delay of medical care and denial of ice for one day does not rise to the level of a constitutional claim. Santiago argues in

response that J. Link was aware of Santiago's serious condition but still took the physician prescribed medical pass from him. Santiago does not address the Corrections Defendants' argument as to the initial perceived delay of medical care.

"[D]eliberate indifference to serious medical needs of prisoners' violates the [Eighth] Amendment because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotations omitted). Among other circumstances, the United States Court of Appeals for the Third Circuit has found deliberate indifference "in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

The Corrections Defendants argue that J. Link's actions denying Santiago access to his ice from the medical unit on one occasion does not amount to deliberate indifference to a serious medical need. The Court disagrees. When accepting all factual allegations as true and construing the complaint in the light most favorable to Santiago, J. Link's actions would appear similar to all three of the examples considered by the Third Circuit Court of Appeals in *Rouse*. As alleged, J. Link knew of Santiago's need for the ice, but intentionally refused to provide it. J. Link also delayed necessary medical treatment—providing Santiago the ice, which was ordered by a doctor—based on non-medical reasons—the ice machine in the medical unit was only for inmates housed in the medical unit. Not providing the ice also prevented Santiago from receiving needed or recommended medical treatment.

Liberally reading the allegations of the complaint in the light most favorable to Santiago, the Court finds that he has adequately alleged a section 1983 claim against J. Link. The Corrections Defendants' motion to dismiss as to J. Link is therefore denied.

### 3. Defendants Meredith and Austin

The Corrections Defendants then argue that Santiago's claims should be dismissed against Meredith and Austin because Santiago was receiving medical treatment for his MS and the alleged denial of ice does not rise to the level of a constitutional claim. Santiago argues that Meredith and Austin were aware of Santiago's serious condition, were shown the physician prescribed medical pass multiple times, and were informed of the medical reasoning for the ice by the medical unit staff. Nevertheless, Meredith and Austin prevented him on a number of occasions from receiving the ice and harassed him about receiving the ice. Santiago contends that confiscating the physician prescribed medical pass for the ice constitutes interference with his medical treatment.

As discussed above, *Helling*'s deliberate indifference to serious medical needs standard applies and the Third Circuit Court of Appeal's instances of where it found deliberate indifference continues to guide the Court. *See Rouse*, 182 F.3d at 197.

The Corrections Defendants argue that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is receiving treatment by the prison's medical staff. *See* Defs.' Supp. Mem. 7, ECF No. 15 (citing *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993)). While the authority cited support their proposition, the Corrections Defendants misapply the holdings in *Spruill* and *Durmer* to the facts as alleged here. In *Spruill* and *Durmer*, the plaintiff-prisoner sued both medical and non-medical prison officials. The claims against the non-medical

prison officials were for conduct where the non-medical officials did not respond directly to the medical complaints of prisoners who were already being treated by medical officials. In those circumstances, the Third Circuit Court of Appeals, held that the non-medical prison officials could not be considered deliberately indifferent. *Spruill v. Gillis*, 372 F.3d 218, 236-37 (3d Cir. 2004); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The circumstances here are different. Santiago alleges that Meredith and Austin did more than just not respond to his medical complaints. Instead, the complaint describes a situation where Meredith and Austin actively prevented him on a number of occasions from receiving the ice that the doctors had ordered.

The Corrections Defendants argue further that Meredith and Austin denying access to ice does not amount to interfering with Santiago's ability to receive prescribed treatments and does not amount to deliberate indifference. They compare their actions to those of a correction officer in *Booth v. Pence*, 141 F. App'x 66 (3d Cir. 2005), who denied a diabetic prisoner sugar packets. The prisoner eventually needed the sugar to offset his insulin shock and ended up going into an alleged diabetic shock. In *Booth*, the Third Circuit Court of Appeals affirmed the district court's grant of summary judgment in favor of the correctional officer because the correctional officer was not aware of a serious medical need for the prisoner to receive the sugar packets, did not exhibit any symptoms of diabetic shock, and did not request medical assistance. The facts in *Booth* are not comparable to those alleged here. Santiago has alleged that Meredith and Austin were aware of his MS, had requested medical assistance for his MS, and had exhibited symptoms.

The circumstances described in the complaint as to Meredith and Austin resemble those where the Third Circuit Court of Appeals found deliberate indifference. *See Rouse*, 182 F.3d at

197; *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (holding that deliberate indifference is manifested by prison guards who intentionally deny or delay access to medical care or intentionally interfere with the treatment prescribed).

Liberally reading the allegations of the complaint in the light most favorable to Santiago, the Court finds that he has adequately alleged section 1983 claims against Meredith and Austin. The Corrections Defendants' motion to dismiss as to Meredith and Austin is therefore denied.

### B. Weiner's Motion to Dismiss

Weiner moves to dismiss on the grounds that Santiago has not alleged his personal involvement. As mentioned above, although Santiago responded to the Corrections Defendants' motion to dismiss, he did not respond to Weiner's motion to dismiss. The Court has screened the complaint with respect to Weiner.

As discussed above in Section IV.A.1, a defendant must have personal involvement in the alleged wrongs. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 536 (1981); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)).

Here, Santiago fails to allege any personal involvement on the part of Weiner in the alleged violation. In the complaint, Santiago does not reference Weiner until after his alleged flare-up and his treatment at Einstein Medical Center Montgomery. Moreover, Weiner's involvement appears to benefit Santiago: he provided Santiago a medical pass for ice, intervened when that medical pass was confiscated, and called the prison administration to explain the situation and the need for Santiago to receive the ice. Absent factual allegations to the contrary or that Weiner was deliberately indifferent to Santiago's medical needs in violation of the Eighth Amendment, Santiago has not plead a section 1983 claim against Weiner. For these reasons,

Santiago's claim against Weiner is dismissed. The Court will, however, grant Santiago leave to file a second amended complaint.

V.     **APPOINTMENT OF COUNSEL**

Santiago filed an Application for Appointment of Counsel on March 19, 2018. The Court denied this application without prejudice but stated that in the event that future proceedings demonstrate the need for counsel, the matter may be reconsidered either sua sponte or upon Santiago's motion. The Court has considered sua sponte whether there is a need for counsel in this case. Having determined that this case has some arguable merit in fact and law and after considering Santiago's ability to present his case, the Court will refer this matter to the Prisoner Civil Rights Panel to attempt to obtain counsel for Santiago.[5]

VI.    **CONCLUSION**

For the reasons stated above, the Defendants' motions to dismiss are granted, granted in part, and denied in part. When dismissing a pro se civil rights complaint, a district court must provide the plaintiff leave to amend his complaint, "unless amendment would be futile or leave to amend is not warranted for some other reason." *Tate v. Morris Cnty. Prosecutors Office*, 284 F. App'x 877, 879 (3d Cir. 2008). It is not clear whether an amendment would be futile; therefore, Santiago's claims as to Defendants Korszniak, Grossman, C. Link, Peurifoy, Knapp, and Weiner will be dismissed without prejudice and Santiago will be allowed to file an amended

---

[5] The Court is referring this action to this district's Prisoner Civil Rights Panel to attempt to find a volunteer attorney willing to represent Santiago. However, the Court cannot compel an attorney to represent him, and there is no guarantee that an attorney will agree to accept his case. Accordingly, Santiago will have to wait to see if an attorney on the Panel is willing to accept his case.

complaint which cures the deficiencies set forth above. The deadline for Santiago to file an amended complaint will be stayed while counsel is sought.

Santiago is advised that the amended complaint "must be complete in all respects. It must be a new pleading that stands by itself as an adequate complaint without reference to any documents already filed." *See Bowens v. Emps. of the Dep't of Corr.*, No. 14-cv-2689, 2015 U.S. Dist. LEXIS 23147 (E.D. Pa. Feb. 26, 2015). It must be a new pleading which stands by itself without reference to the original complaint and it "may not contain conclusory allegations [; r]ather, it must establish the existence of specific actions by the defendants which have resulted in constitutional deprivations." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)). "The amended complaint must also be 'simple, concise, and direct' as required by the Federal Rules of Civil Procedure." *Id.* (citing Fed. R. Civ. P. 8(e)(1)).

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge